Foy and Dulaney *v.* Sinclair.

Foy and Dulaney *v.* Sinclair.

*(Knoxville.    October 31, 1893.)*

1. PRINCIPAL AND SURETY.  *Relation exists, when.*

Where two joint owners of property convey it to secure the debt of one of them, the other assumes in the transaction the attitude of surety for the debt to the extent of the value of his interest in the property thus conveyed.

2. SAME.  *Marshaling securities between creditors of.*

And judgment creditors of such surety, having obtained return of execution *nulla bona*, may, by appropriate proceedings in a Court of Equity, compel his principal's creditors thus secured by conveyance of their joint property, to exhaust the principal's interests embraced in the conveyance, and leave the surety's interests, so far as practicable, for the benefit of his own creditors.

Cases cited and approved: House *v.* Thompson, 3 Head, 512; 41 N. J. Eq., 519.

3. SAME.  *Release of surety.*

And such surety and his property embraced in the joint conveyance, are released from all liability for the principal's debt therein secured, where the principal, without the assent of the surety, renews the note evidencing the indebtedness, with different indorsers, and is granted by the creditor an extension upon the foreclosure of the joint trust conveyance.

---

FROM  WASHINGTON.

---

Appeal from Chancery Court of Washington County.  JOHN P. SMITH, Ch.

Foy and Dulaney *v.* Sinclair.

KIRKPATRICK, WILLIAMS & BOWMAN for Complainants.

ISAAC HARR for Defendants.

McALISTER, J. This is an appeal from the Chancery Court of Washington County. The original bill was filed to marshal and subject certain assets to the satisfaction of a judgment that Dulaney had recovered against the defendant, E. M. Sinclair, and upon which execution had been returned *nulla bona*. It appears from the record that one W. M. Christian borrowed $5,000 from a bank in Greeneville, executing his note, with G. C. Harris, Isaac Harr, and W. W. Faw as sureties, and that, for the purpose of securing these sureties, Christian conveyed to Robert Burrow, in trust, his residence, valued at about $5,500, and a lot owned by him. In addition to the residence, Christian conveyed two lots on Watauga Avenue, in Johnson City, which belonged to Christian and E. M. Sinclair as tenants in common.

Dulaney is seeking by this bill to subject Sinclair's interest in the two lots on Watauga Avenue to the payment of his debt. Sinclair joined Christian in the execution of the trust-deed to Burrow, and thus conveyed his undivided interest in these two lots as security to save harmless the indorsers of Christian on the $5,000 note. In the original bill it is charged, and the proof shows, that defendant, Sinclair, was in no sense

a party to the note executed to the Greeneville National Bank, and that the attitude of Sinclair in this transaction was merely that of a surety. He conveyed his interest in the Watauga Avenue lots to the trustee, Burrow, as indemnity to the sureties, Harris, Faw, and Harr, who had indorsed Christian's note to the Greeneville bank. In the original bill it is charged that the individual property of Christian, conveyed in the trust-deed, was more than sufficient to indemnify the beneficiaries against the trust indebtedness, and it was prayed that the assets be marshaled so as to compel the paramount incumbrancer to subject the property of Christian to the satisfaction of his own debt, and leave the property of the judgment debtor, Sinclair—to wit: his undivided interest in the Watauga Avenue lots—to the satisfaction of complainant's judgment.

It appears that, pending the progress of the cause, A. W. Hoss and C. W. Hodge intervened by petition, asking to be made parties, and alleging they had procured a novation or renewal of the $5,000 note secured by the trust-deed to Robert Burrow, in which renewal petitioners Hoss and Hodge had become prior guarantors and indorsers of said notes, their liability, as between indorsers, to be prior to that of the beneficiaries in the trust-deed.

It was further averred in said petition that, in consideration of Hoss and Hodge assuming this relation to said paper, the said deed of trust was, by a written and contemporaneous contract, assigned

to petitioners, together with all the rights of the beneficiaries thereunder.

It may be stated, by way of further explanation, that the original connection of Hoss and Hodge with the transaction was that Christian also owed them $5,000, and, as security, they had a second mortgage or trust-deed on this property. This second trust-deed was on the property alone of Christian, and was not executed by Sinclair.

As already stated, Hoss and Hodge filed their petition, were made parties, and allowed time to file pleadings appropriate to their defense. They declined, however, to make any defense; but, on the contrary, while the suit for the property was still pending, Hoss and Hodge took a direct conveyance from Christian and Sinclair to all the property conveyed in the original trust-deed, including the undivided interest of Sinclair in the Watauga Avenue lots. Thereupon, complainant, Dulaney, filed his amended and supplemental bill, setting forth the above facts, and seeking to hold Hoss and Hodge liable for one-half of the fair market value of the said lots, that amount representing the one-half undivided interest of Sinclair therein.

The Chancellor held that complainant, Dulaney, as a judgment creditor of defendant, Sinclair, with return of *nulla bona*, by the filing of his original bill herein, secured a lien on the one-half undivided interest of E. M. Sinclair in the Watauga Avenue lots, in Johnson City.

The Chancellor further adjudged that complain-

ant was entitled to have the trust-deed executed to Robert Burrow, trustee, by W. M. Christian and E. M. Sinclair, to secure the debt of Christian, so enforced and the assets marshaled as that the property of Christian conveyed therein should pay his (Christian's) said debt, leaving the undivided interest of said Sinclair, who was his surety, subject to the operation of complainant's said lien.

The Chancellor was further of opinion that the equity of complainant was superior to any equity shown by the defendants, Hoss and Hodge, who intervened by petition, and that said Hoss and Hodge, by taking a direct conveyance to the whole of said lots, thus preventing a foreclosure of said trust-deed and marshaling of the assets, have made themselves liable to respond to complainant to the amount of the fair cash market value of the one-half undivided interest in said lots owned by E. M. Sinclair, and the Court found said value to be $550. Defendants Hoss and Hodge appealed, and have assigned errors.

It is insisted that the decree of the Chancellor is erroneous, for the reasons, first, that the right to marshal the assets in this case as complainant seeks to do, does not exist, because the rule by which one creditor who has the right to go upon two funds, may be forced by another creditor who has a lien upon only one of the funds, to seek payment first from the fund to which he can exclusively resort, is confined to cases where creditors have the same debtor, and the funds are the prop-

erty of the same person. 3 Head, 512. We are of opinion this assignment of error is not well taken, for the reason that the relation of Sinclair to this transaction was merely that of a surety to Christian, who was the principal debtor, and primarily bound, and the conveyance of Sinclair's property was intended as a security to indemnify the indorsers of Christian against liability on account of said indorsements. As surety, it was the right of Sinclair to have the assets so marshaled as to compel the creditors to subject the property of his principal to the payment of the debt secured by the trust-deed before going upon the property of the surety. That right being conceded to the surety, it follows that a judgment creditor of the surety would have the same right. In the case of Huston's Appeal, 69 Pa., 485, it was held that if one of the joint debtors is primarily liable, marshaling may be enforced for the benefit of the creditors of the other who is only secondarily liable for the debt.

Again, in *Philadelphia & Reading Railroad Co.* v. *Little*, 41 N. J. Eq., 519, it was held that, in equity, relief will be afforded to a surety for his indemnity out of the property of his principal, where the equitable rights of the surety may be protected without prejudicing the substantial rights of the creditor, either by an injunction bill to restrain the sale of the surety's property until the principal's property, pledged for the same debt, is first applied, or by a bill for subrogation to the

creditor's rights against the principal's property, or by marshaling the securities and the application of them to the debt in the order in which they are equitably chargeable according to the circumstances of the particular case. This equity will be enforced in like manner in favor of the creditors of a surety. The principle is well settled that, if the relation of suretyship exists between B and C, so that B is a surety for C's debt, A may be compelled to make him pay who is primarily liable, and leave the surety's property to pay the surety's debts.

We do not, however, further notice this assignment of error, as the case must be decided upon another point. It appears from the record that on the twelfth of August, 1891, there was a novation or renewal of the note to the First National Bank of Greeneville by W. M. Christian as principal, and the said G. C. Harris, W. W. Faw, and Isaac Harr as indorsers, in which renewal A. F. Hoss and C. W. Hodge became prior warrantors and indorsers of said note, and, in consideration of the assumption of this relation of prior guarantors and indorsers by Hoss and Hodge, the said original deed of trust was, by a written contemporaneous contract, assigned to Hoss and Hodge, together with all the rights, powers, and interests of the said Harris, Faw, and Harr, secured as indorsers by said trust-deed. It is now insisted that, as E. M. Sinclair did not agree to the novation, and did not sign the instrument, he was released

as surety and his property discharged. If this is true as a legal proposition, it follows that complainants will be entitled to a satisfaction of their judgment out of this property, independent of the question of marshaling.

Complainants, as already stated, have a judgment with a return of *nulla bona,* and, upon the filing of their bill, a lien was created upon this property; and if it has been discharged of the lien of a prior incumbrancer, there is no obstacle in the way of subjecting it to sale. It is insisted, however, on behalf of defendants, that the surety was not discharged, because it is not shown he was injured by the delay. It will be remembered that the original undertaking of Sinclair as a party to the Burrow trust-deed was to save harmless, by a mortgage of his property, the original indorsers, Harr, Faw, and Harris, and, by the contract of novation, his undertaking was changed without his assent, and his property was made security for Hoss and Hodge, other and different indorsers.

Again, we are of opinion that Sinclair was released, and his property discharged, by an extension of the foreclosure of the trust-deed, which was made by the contract of novation. The agreement recites on its face, viz.: "And, whereas, the said first-named debt due to said bank is about to mature, and the first-named trust-deed is foreclosable for the benefit of the sureties aforesaid, which foreclosure it is the desire of all parties hereto to prevent." Sinclair was not a party

to this extension, and we are of opinion it operated to discharge him from the obligation of said original trust-deed, and. to release his property therein conveyed.

The decree of the Chancellor will be affirmed to the extent that the Watauga Avenue lots will be subjected to sale for the satisfaction of complainants' judgment. Defendants will pay the costs.